UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ROBERT SCHULER,                                    :

               Plaintiff,              :

                                                  Civil Action

            v.                                  :      No.

TOWN OF SHIRLEY, MASSACHUSETTS,         :
and ARMAND DEVEAU, DAVID SWAIN and
KENDRA J. DUMONT, individually and in their :    **COMPLAINT**
official capacities as members of the Board of
Selectmen of the Town of Shirley, and DAVID  :
BERRY, individually and in his official capacity
as Chief Administrative Officer of the Town of :
Shirley,
                                            :

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

       This is a civil rights action for the unlawful banishment of plaintiff Robert

Schuler, a public official in Shirley, Massachusetts, from all Shirley town property.  Purportedly

in reaction to statements Mr. Schuler made as a member of the town's Finance Committee,

Defendants issued a Notice of Trespass barring Mr. Schuler from the town's structures and lands,

depriving him of his constitutionally protected rights to free speech, to petition the government,

and to due process.  The defendants are Armand Deveau, David Swain and Kendra J. Dumont

(collectively, the "Shirley Board of Selectmen" or the "Selectmen"), and the Town of Shirley

and the town's Chief Administrative Officer, David Berry (collectively with the Selectmen,

"Defendants").  Mr. Schuler alleges as follows, on the basis of his personal knowledge as to

himself, and on information and belief as to all other matters:

## INTRODUCTION

1.      Mr. Schuler has been a Shirley resident and active community participant for more than twenty years, and is currently a volunteer on the town's Finance Committee and Sewer Commission.  From time to time, Mr. Schuler has criticized Defendants for failing to address serious issues of public concern involving Shirley.

2.      In 2011, the town faced a difficult budgetary process.  The town's budget deficit had soared to several hundred thousand dollars, and the Selectmen were required by law to finalize and make public a proposed budget two weeks prior to a town meeting to be held on June 6.  As the deadline approached, Mr. Schuler criticized the Selectmen's inaction during Financial Committee meetings.  At a meeting on May 2, 2011, Mr. Schuler stated that he would "pull my gun out and start shooting or something" if Defendants persisted in failing to address the budget.  A video taken at the meeting demonstrates that Mr. Schuler's remarks were not intended to be taken seriously.  Indeed, nobody present at the meeting expressed any concern about those remarks.

3.      Nevertheless, Defendants -- none of whom were present at the meeting -- subsequently caused to be issued a Notice of Trespass that bans Mr. Schuler from town lands and buildings (the "Notice").  Mr. Schuler was not represented and was not allowed to testify when Defendants determined to issue the Notice.  Yet, the ban is indefinite, and could conceivably last for the rest of Mr. Schuler's life.

4.      Mr. Schuler regrets making the statement at issue, and has made multiple public apologies for it.  Members of the town committees on which Mr. Schuler sits have stated that they do not feel threatened by Mr. Schuler, and have asked the Selectmen to withdraw the Notice. But Defendants have not done so.  Instead, they have kept the Notice in place and have asked Mr.

Schuler to undergo either a "behavioral evaluation" or "anger management training" -- by a professional subject to their approval -- or else resign from his public positions.

5.     Defendants' actions constitute unlawful retaliation for Mr. Schuler's exercise of his First Amendment rights, namely, his criticism of them.  Defendants' actions also constitute an ongoing violation of Mr. Schuler's First Amendment rights -- including the freedom of speech and the right to petition the government -- because those actions prohibit Mr. Schuler from ever setting foot on town properties where he would exercise, and has exercised, those rights.  Finally, Defendants violated Mr. Schuler's due process rights by issuing the Notice without providing any notice or opportunity to be heard.

6.     Mr. Schuler seeks an order (i) declaring that Defendants violated his rights; (ii) enjoining Defendants to withdraw the Notice; (iii) awarding compensatory damages, if appropriate; (iv) awarding punitive damages against Defendants Deveau, Swain, Dumont and Berry (the "Individual Defendants"), if appropriate; (v) awarding the costs of the action and reasonable attorneys' fees; and (vi) awarding such other and further relief as this Court deems just and proper.

## JURISDICTION AND VENUE

7.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the First and Fourteenth Amendments of the United States Constitution.  This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction under 28 U.S.C. § 1367.

8.     Venue is proper in this Court under 28 U.S.C. § 1391(b), because the events giving rise to the claims occurred in this district.

## PARTIES

9.      Plaintiff Robert Schuler is a citizen of Massachusetts and a resident of Shirley, Massachusetts.  He is currently serving his third term as an elected member of the town Sewer Commission, and his fourth term as an appointed member of the town Finance Committee.

10.      Defendant Town of Shirley is a duly organized town in the Commonwealth of Massachusetts.  The decisions and conduct of the Individual Defendants alleged herein constituted official action taken by the town.

11.      Defendant Armand Deveau was at all times relevant to this Complaint a citizen of Massachusetts, a resident of Shirley, Massachusetts and a member of the Shirley Board of Selectmen.  His actions alleged in the Complaint were taken under the color of law of the Commonwealth of Massachusetts.  He is sued in his individual and official capacities.

12.      Defendant David Swain was at all times relevant to this Complaint a citizen of Massachusetts, a resident of Shirley, Massachusetts and a member of the Shirley Board of Selectmen.  His actions alleged in the Complaint were taken under the color of law of the Commonwealth of Massachusetts.  He is sued in his individual and official capacities.

13.      Defendant Kendra J. Dumont was at all times relevant to this Complaint a citizen of Massachusetts, a resident of Shirley, Massachusetts and a member of the Shirley Board of Selectmen.  Her actions alleged in the Complaint were taken under the color of law of the Commonwealth of Massachusetts.  She is sued in her individual and official capacities.

14.      Defendant David Berry was at all times relevant to this Complaint a citizen of Massachusetts, a resident of Shirley, Massachusetts and the Chief Administrative Officer of the Town of Shirley.  His actions alleged in the Complaint were taken under the color of law of the Commonwealth of Massachusetts.  He is sued in his individual and official capacities.

## FACTS

### Mr. Schuler Has Been An Active Participant
### In The Shirley Community For Over Twenty Years

15.     Mr. Schuler has been a resident and active participant in the Town of Shirley

community for over twenty years.  Mr. Schuler owns and operates a Shirley-based business, and

actively volunteers in the local government.

16.     Among other things, Mr. Schuler has volunteered to serve on numerous town

teams and committees.  By way of example, he participated for three years on the School

Committee (for which he once served as Chair); he served on the Building Study Committee; he

served on a team responsible for selecting Shirley's School Superintendent; he served on a team

responsible for selecting the principal of a grade school in Shirley; he twice served on a

committee to select town police officers; he served on a team responsible for screening

candidates for principal of the Regional School District; and he served on a team responsible for

screening candidates for the position of Superintendent for the School Region.

17.     Mr. Schuler is currently serving his third three-year term as an elected member of

the Sewer Commission.  He is also serving his fourth term as an appointed member of the

Finance Committee.  After serving two three-year terms in the 1990's, Mr. Schuler was

reappointed to that position in January 2011 by the Shirley Town Moderator to replace a

committee member who resigned mid-way through his term.  Mr. Schuler has since been

reappointed for a fourth term, which will last three more years.

18.     According to the Town of Shirley website, "[t]he Finance Committee has the

charter to represent the citizens of Shirley with regards to the town budget."  The Finance

Committee meets regularly to review the town budget and to make recommendations on the

budget to the Shirley Board of Selectmen.  While the Finance Committee advises the Selectmen

on budgetary issues, ultimately the Selectmen have the authority to make budgetary decisions.

### Mr. Schuler Has Publicly Criticized Defendants' Conduct As Town Representatives

19.     Based on Defendants' conduct as town representatives, Mr. Schuler has on

various occasions criticized Defendants regarding issues of public concern.

20.     Upon rejoining the Finance Committee in early 2011, Mr. Schuler learned that

although the town budget had to be finalized by May 2011, the Selectmen had failed to make

necessary budgetary decisions and to take steps to reduce the town deficit (which was at least

several hundred thousand dollars).  In an effort to remedy that situation, Mr. Schuler and the rest

of the Finance Committee expressly advised the Selectmen to fix the town's budgetary problems

by, among other things, committing to cut spending.  Mr. Schuler also asked at several Finance

Committee meetings what, if anything, the Selectmen had done to address their concerns.  He

was told at each meeting that no budgetary decisions had been made by the Selectmen.  He also

learned that the Selectmen had appointed a finance "team" that was meeting and making

decisions on the budget without communicating its findings or strategies publicly, despite

multiple requests for that information.

21.     Mr. Schuler made remarks during those Finance Committee meetings expressing

his dissatisfaction with the Selectmen's handling of the budget and their unwillingness to

conduct a transparent decision-making process.  Mr. Schuler's criticism was not secret:  all

Finance Committee meetings are videotaped and made available to the Selectmen and to the

public.

22.     Mr. Schuler has criticized other conduct by members of the Shirley Board of

Selectmen on matters of public concern.  Among other things, Mr. Schuler did not support the

reelection of members of the Board of Selectmen.  Mr. Schuler has also criticized the Selectmen

for their judgment on various issues, including their endorsements of other town officials and

employees.

**At The May 2, 2011 Finance Committee Meeting, Mr. Schuler**
**Made An Obviously Hyperbolic Statement That Was Not Intended**
**As, And Could Not Have Been Reasonably Understood As, A True Threat**

23.     On May 2, 2011, Mr. Schuler attended a meeting of the Finance Committee.  Six

other people were present.  None of the Defendants sat on that committee or were present at that

meeting.  In accordance with town protocols, the meeting was videotaped.  A true and accurate

copy of that video recording, which is a public record of the Town of Shirley of which this Court

may properly take judicial notice, is submitted herewith as Exhibit A to this Complaint.

24.     During the meeting, members of the Finance Committee discussed various

aspects of the town's financial situation, including the town's budget deficit.  Mr. Schuler

continued to be concerned that, despite the impending budget deadline, the Selectmen still had

not made decisions on necessary reductions and continued to refuse to make their decision-

making process public.  In reaction to this circumstance, Mr. Schuler stated in a figurative and

offhanded manner that, "[t]he only question I have about the budget is what have the Selectmen

done with this if anything.  Don't tell me they haven't done anything with it, or I'm going to . . .

pull my gun out and start shooting or something."  (See Exhibit A, starting soon after the 23:30

mark.)

25.     Another committee member responded that "[t]hey have not done anything with it

as a Board of Selectmen as far as I know," and another committee member agreed.  Mr. Schuler

then responded that "they haven't made any decisions on the requests [to commit to reduced

spending] provided to them."  The meeting continued for more than 30 more minutes, and each

of the seven individuals present stayed for its duration, without mentioning or expressing any

concern whatsoever about Mr. Schuler's statement.

26.     The video recording of the Finance Committee meeting demonstrates that Mr.

Schuler did not make a true threat.  His tone was not menacing, and his comment was obviously

a rhetorical overstatement.  None of the Finance Committee members left the meeting or

expressed any concern or alarm about Mr. Schuler's statement.

<b>Defendants Issued The Notice Of Trespass Without<br><u>Conducting A Hearing And Without Affording Mr. Schuler Representation</u></b>

27.     Defendants became aware of Mr. Schuler's statements at issue here, and on May

7, 2011, confidentially notified Shirley police of those statements.  The police visited Mr.

Schuler at his home and asked him to voluntarily surrender the firearms in his possession and his

Class A firearms license.  Mr. Schuler complied.  However, Mr. Schuler was not arrested, and no

charges were brought against him.

28.     On May 9, 2011, the Selectmen and the Finance Committee held a joint meeting.

Mr. Schuler appeared at that meeting and publicly apologized for his remarks made at the May 2,

2011 meeting.  The Selectmen then informed Mr. Schuler that they had already made a decision

to issue a Notice of Trespass against him.  A police officer, present at the meeting, then handed

Mr. Schuler the Notice.

29.     The Selectmen made their decision to issue the Notice without conducting a

hearing and behind closed doors.  Mr. Schuler was not represented, nor was he invited or

permitted to speak on his own behalf.  Also, none of the witnesses who were present for Mr.

Schuler's remarks were asked to testify.

30.     The Notice prohibits Mr. Schuler from "enter[ing] or remain[ing] in or upon [any]

dwelling, building, boat, improved or enclosed land, wharf, or school bus" owned by the town of

-8-

Shirley.  The Notice has no expiration date, and indicates that any violation may lead to arrest and imprisonment, a fine, or both.

### Although Mr. Schuler Obviously Made No
### <u>True Threat, Defendants Refuse To Withdraw The Notice Of Trespass</u>

31.     Numerous individuals, including the members of the Finance Committee (who were present when Mr. Schuler made his remarks) and members of the Sewer Commission have asked Defendants to withdraw the Notice.  They have stated their belief that Mr. Schuler made no actual threat and that the Notice was unwarranted.  Yet Defendants continue to refuse to withdraw the Notice.

32.     In a letter dated August 2, 2011, members of the Sewer Commission requested that "the Board of selectmen rescind the [Notice] as it pertains to Mr. Schuler."  The letter explains that Mr. Schuler "has been a valuable and long term member of the Sewer Commission" and that "none of us, in any way, feel threatened by [Mr. Schuler's] presence and would like to move forward in the best interest of the town and all of those in the sewer district" by allowing Mr. Schuler back on town property.

33.     The Chair of the Finance Committee likewise appeared in person at a meeting of the Selectmen to request that they withdraw the Notice.

34.     The Selectmen discussed the issue at a meeting on August 8, 2011.  Again, they did not allow Mr. Schuler to be represented or to speak on his own behalf.

35.     On August 11, 2011, Defendant Berry, on behalf of the Selectmen, sent a letter to Mr. Schuler issuing an ultimatum:  either he undergo the invasive, humiliating and unnecessary experience of a "behavioral evaluation" or "anger management training" administered by an organization or individual approved by the Selectmen, or he would continue to be barred from

town property in perpetuity and would be asked to "resign immediately from all Shirley boards or committees."

36.     In October 2011, the Sewer Commission issued a second letter to the Selectmen asking them to withdraw the Notice.  That letter stated:

> [i]t is our understanding that Mr. Schuler has made a public and private heartfelt, sincere, and genuine apology for any comments made at a [Financial Committee] meeting.  We hope that the members of the [Shirley Board of Selectmen] can join us and many others in accepting this apology.  Mr. Schuler possesses valuable credentials and expertise and is eager to return to volunteer community service both as a current and former member of [the Finance Committee], and longstanding member of the Shirley Sewer Commission.

37.     Defendants again ignored the Sewer Commission's request, so in or about late 2011 or early 2012, the members of the Sewer Commission discussed the possibility of holding their meetings off of town property so that Mr. Schuler could attend.

38.     On February 7, 2012, Defendant Berry, on behalf of the Selectmen, sent a letter to Mr. Schuler acknowledging that the Sewer Commission was considering meeting "at a location outside of Shirley municipal property."  By way of response to that possibility, Mr. Berry's letter reiterated the ultimatum from his August 11, 2011 letter.

39.     After Mr. Berry sent that letter, the property manager rescinded his offer to allow the Sewer Commission meetings to take place at his establishment.  Currently, the only available place for those meetings is on town property, and Mr. Schuler is prevented from appearing in person.

40.     Mr. Schuler currently retains both of his public positions, having been reappointed to the Finance Committee and reelected to the Sewer Commission since the time the controversy described herein arose.

41.     In April 2012, almost one year into Mr. Schuler's exclusion from town property, the American Civil Liberties Union of Massachusetts ("ACLUM") sent a letter to the Selectmen explaining that Defendants' conduct was violating Mr. Schuler's constitutional rights.  After receiving no response, ACLUM sent a follow-up letter in May 2012.  A member of the Selectmen agreed to meet with an ACLUM attorney, who again explained why Defendants' conduct violates the law.  Regardless, Defendants continue to refuse to withdraw the Notice, unless Mr. Schuler submits to their humiliating and excessive demands.

**Defendants Have Violated Mr. Schuler's Civil Rights By
Retaliating Against His Prior Protected Speech, By Continuing To Curtail
His Freedom of Speech And Right to Petition, And By Denying Him Due Process**

42.     Defendants had no basis for issuing the Notice of Trespass, and they have no basis for continuing to refuse to withdraw it:  the facts demonstrate that Mr. Schuler made no credible threat.  Rather, Defendants are retaliating against Mr. Schuler for his prior protected speech criticizing them, in violation of Mr. Schuler's First Amendment rights.

43.     Defendants have also violated Mr. Schuler's First Amendment rights by significantly and impermissibly restricting, on an ongoing basis, his freedom of speech and right to petition.  As a result of the Notice, Mr. Schuler can no longer attend in person the meetings of the committees on which he sits.  Mr. Schuler has had to miss committee meetings and is unable to fully participate in the meetings he can attend, instead participating in a limited way via telephone.

44.     Mr. Schuler is likewise unable to participate in other town activities, such as town meetings, public hearings and special events held in town buildings.  This past November, he had to vote by absentee ballot rather than in person.  The Notice also impedes his efforts in further running for public office, in that he cannot use all the processes available to other candidates.

-11-

Mr. Schuler also is prohibited from going to Shirley's town hall and conducting regular business, such as obtaining required licenses. He also can no longer go to the police department and the town library, or utilize various town amenities, such as salt and sand offered by the highway department for deicing.

      45.     If Mr. Schuler does need to enter upon town property, the only way he may do so is by paying time-and-a-half for a police escort, which requires payment for a minimum of four hours.

      46.     Even assuming that Mr. Schuler's statement were the actual reason that Defendants caused the Notice to be issued -- and not his criticisms of them -- the Notice still violates Mr. Schuler's First Amendment rights.  Mr. Schuler made a rhetorical overstatement:  he did not make, and certainly was not convicted of making, a true threat.  The Notice is inappropriate under these circumstances, and in fact would not be appropriate even if Mr. Schuler had been convicted for making a true threat:  such a conviction would not have yielded an indefinite ban from town property.  In short, Mr. Schuler's conduct does not justify the Notice.

      47.     Finally, Defendants have violated Mr. Schuler's civil rights by issuing the Notice without first giving Mr. Schuler notice or an opportunity to be represented or heard.  Their unilateral decision, made behind closed doors, has deprived Mr. Schuler of due process.

      48.     Defendants have acted intentionally, willfully, and/or with reckless disregard or callous indifference to Mr. Schuler's constitutional rights.  Defendants have violated Mr. Schuler's First Amendment rights to freedom of speech and to petition; his right to freedom of expression under Article Sixteen of the Massachusetts Declaration of Rights; and his right to due process under the Fourteenth Amendment.  As a result, Mr. Schuler has suffered emotional distress and cannot fully carry out his duties as a public official.

### COUNT I
### 42 U.S.C. § 1983 CLAIM AGAINST ALL INDIVIDUAL DEFENDANTS
### FOR VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS

49.     Mr. Schuler repeats and realleges each of the allegations contained in the preceding paragraphs as if fully set forth herein.

50.     The Individual Defendants have violated Mr. Schuler's civil rights by retaliating against him based on his prior protected speech.  The Individual Defendants have further violated Mr. Schuler's civil rights by preventing him, on an ongoing basis, from entering town property and exercising his constitutional rights.  As a result of the conduct of the Individual Defendants, Mr. Schuler has been deprived of his well-established rights to freedom of speech and petition under the First and Fourteenth Amendments.

### COUNT II
### 42 U.S.C. § 1983 CLAIM AGAINST ALL INDIVIDUAL
### DEFENDANTS FOR VIOLATION OF PLAINTIFF'S RIGHT
### TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT

51.     Mr. Schuler repeats and realleges each of the allegations contained in the preceding paragraphs as if fully set forth herein.

52.     By denying Mr. Schuler the opportunity to present evidence and cross-examine witnesses against him before the issuance of the Notice of Trespass and at subsequent hearings concerning the Notice of Trespass, the Individual Defendants deprived Mr. Schuler of his property interest in his official positions and in his liberty without due process of law required by the Fourteenth Amendment.

### COUNT III
### 42 U.S.C. § 1983 *MONELL* CLAIM
### AGAINST DEFENDANT TOWN OF SHIRLEY, MASSACHUSETTS

53.     Mr. Schuler repeats and realleges each of the allegations contained in the preceding paragraphs as if fully set forth herein.

54.     The conduct of the Individual Defendants described herein constitutes the official

policy of the town of Shirley, Massachusetts.

55.     As a direct and proximate result of Defendants' actions, Mr. Schuler suffered the

damages described herein.

## COUNT IV
## MASS. GEN. LAWS ch. 12, §§ 11H & I
## CLAIM AGAINST ALL INDIVIDUAL DEFENDANTS

56.     Mr. Schuler repeats and realleges each of the allegations contained in the

preceding paragraphs as if fully set forth herein.

57.     By issuing the Notice of Trespass and refusing to withdraw it based on Mr.

Schuler's protected expression relating to matters of public concern, and by issuing the

ultimatum that Mr. Schuler undergo the invasive, humiliating and unnecessary experience of a

"behavioral evaluation" or "anger management training" administered by an organization or

individual approved by the Selectmen, or he would be barred from town property and asked to

resign from his public positions, the individual Defendants used threats, intimidation and

coercion that interfered with Mr. Schuler's exercise of rights guaranteed to him by the United

States and Massachusetts Constitutions, thereby violating the Massachusetts Civil Rights Act,

Mass. Gen. Laws ch. 12, §§ 11H and I.

## COUNT V
## MASS. GEN. LAWS ch. 231A, § 1, et seq.
## DECLARATORY JUDGMENT ACT CLAIM AGAINST ALL DEFENDANTS

58.     Mr. Schuler repeats and realleges each of the allegations contained in the

preceding paragraphs as if fully set forth herein.

59.     There is an actual controversy between the parties as to whether Defendants

violated Mr. Schuler's rights to freedom of expression, to petition the government, and to due

process of law under the Massachusetts Declaration of Rights, including Article 16 and Articles

1, 10 and 12.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Robert Schuler requests judgment against Defendants as follows:

A.      Declare that Defendants violated Plaintiff's rights;

B.      Issue an injunction compelling Defendants to withdraw the Notice of Trespass;

C.      Award compensatory damages, if appropriate;

D.      Award punitive damages against Defendants Deveau, Swain, Dumont and Berry,

if appropriate;

E.      Award the costs of the action and reasonable attorneys' fees; and

F.      Award such other and further relief as this Court deems just and proper.


Dated: Boston, Massachusetts                          Respectfully submitted,
       February 14, 2013

                                                      /s/  Nicholas I. Leitzes
                                                      Kurt Wm. Hemr (BBO #638742)
                                                      Nicholas I. Leitzes (BBO #669089)
                                                      One Beacon Street, 31st Floor
                                                      Boston, Massachusetts 02108
                                                      (617) 573-4800
                                                      Kurt.Hemr@probonolaw.com
                                                      Nicholas.Leitzes@probonolaw.com

                                                      Matthew R. Segal (BBO #654489)
                                                      Laura Rótolo (BBO #665247)
                                                      ACLU of Massachusetts
                                                      211 Congress Street, Third Floor
                                                      Boston, Massachusetts 02110
                                                      (617) 482-3170
                                                      MSegal@aclum.org
                                                      LRotolo@aclum.org

                                                      Counsel for Plaintiff Robert Schuler

-15-